UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ROBERTO SANCHEZ DIAZ, | Case No. 2:26-cv-00310-MMD-MDC |
| Petitioner, | ORDER |
| v. | |
| PAMELA BONDI, *et al.*, | |
| Respondents. | |

I.    **SUMMARY**

Petitioner Roberto Sanchez Diaz, an immigration detainee challenging his ongoing federal detention at Nevada Southern Detention Center, filed an amended counseled petition asserting five Grounds for federal habeas corpus relief under 28 U.S.C. § 2241. (ECF No. 10 ("Petition").) Respondents filed a response (ECF No. 18)[1] and Petitioner replied (ECF No. 19). The Court ordered Respondents to file supplementary briefing to address factual disputes between the parties. (ECF No. 20.) Respondents complied after the Court approved a request for extension. (ECF Nos. 21, 22, 23.) The Court now grants the Petition on Grounds One and Two and orders Sanchez Diaz released.

II.    **BACKGROUND**

Petitioner is a Cuban citizen. (ECF No. 10 at 4.) He was paroled into the United States in 1995. (ECF Nos. 10 at 4, 18-2 at 4.) On August 20, 2022, an Immigration Judge ordered Petitioner removed to Cuba. (*Id.*) On April 11, 2003, he was released from ICE custody under an order of supervision. (*Id.*) Petitioner complied with his order of

---

[1]Respondents did not respond to the Petition within the Court-ordered deadline and Petitioner filed a notice of Respondents' non-opposition. (ECF No. 12.) Respondents then filed a motion to extend time retroactively (ECF No. 13) which Petitioner opposed (ECF No. 14). The Court rejected Respondents' reasoning for the delay and found the delay to be prejudicial. (ECF No. 15 at 2-3.) However, the Court concluded the minimal delay was not in bad faith and granted the extension due to Respondents' excusable neglect. (*Id.* at 3-4.) Respondents filed their response within the new deadline.

supervision for the last 24 years. (ECF No. 10 at 4.) On January 20, 2026, Petitioner was taken back into ICE custody. (*Id.*)

Respondents allege the government attempted to execute Petitioner's removal order through two deportation flights to Cuba on January 17, 2026 and February 22, 2026. (ECF No. 18 at 1.) Respondents allege that "[o]n both occasions [Petitioner] refused to board his removal flight." (*Id.*) Petitioner alleges that the "purported removal flights were actually to Mexico." (ECF No. 19 at 2.)  The Court directed Respondents to file evidence clarifying whether the removal attempts were to Cuba or Mexico. (ECF No. 20.) Respondents filed a Notice of Deportation from January 27, 2026 informing Petitioner of the government's intent to remove him to Mexico. (ECF No. 23-1.) Respondents informed the Court that the "discrepancy" between this evidence and their representations to the Court that the removal attempts were to Cuba was due to reliance on the Form I-213 which states Petitioner "will be held in ICE custody pending his removal to Cuba." (ECF No. 23 at 2 (quoting ECF No. 18-2 at 5).)

III.    **LEGAL STANDARD AND JURISDICTION**

Habeas corpus "is an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The Constitution guarantees that a writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A writ of habeas corpus may be granted to a petitioner who demonstrates they are in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

The Court rejects Respondents' claim that the Court "has no jurisdiction over this matter as there is a final order of removal pertaining to Petitioner to be removed to Cuba and Petitioner has willfully refused to board the removal flight in violation of 8 U.S.C. § 1253(a)(1)." (ECF No. 18 at 2.) First, upon prompting by the Court (ECF No. 20), Respondents concede that the relevant removal flights were not to Cuba, where Petitioner

2

has a final order of removal, but rather to Mexico. (ECF Nos. 23 at 2, 23-1.) This, at best negligent, error undermines Respondents' claim.

Moreover, even if Petitioner had violated Section 1253(a)(1), this still would not strip the Court of jurisdiction to review the lawfulness of Petitioner's detention. *See* 8 U.S.C. § 1253(a)(1). Section 1253(a) merely imposes a penalty for failure to comply with removal pursuant to a final order of removal. *Id.* The statute does not divest the Court of habeas jurisdiction.[2] The Court therefore rejects Respondents' argument and finds it has jurisdiction over the Petition.

## IV.    DISCUSSION

Petitioner argues in Ground One and Ground Two of the Petition that his continued detention violates his Fifth Amendment right to due process and 8 U.S.C. § 1231(a)(6) because his removal is not reasonably foreseeable. (ECF No. 10 at 13-15.) Respondents argue Petitioner's rights are limited to statutory protections and that those provisions authorize his detention because he is within the mandatory removal period and because he refused to board removal flights. (ECF No. 18 at 2-3.)

Individuals with final removal orders are subject to mandatory detention during a 90-day "removal period". *See* 8 U.S.C. §§ 1231(a)(1), (2)(A). This 90-day removal period generally begins on the date a removal order becomes final. *See id.* at § 1231(a)(1)(B). The removal period "shall be extended beyond a period of 90 days" where a noncitizen "conspires or acts to prevent" their removal "subject to an order of removal." *Id.* at § 1231(a)(1)(C). While the Attorney General has discretion to detain noncitizens beyond the 90-day removal period, the Supreme Court found due process imposes an "implicit limitation" on that discretion. *See id.* at § 1231(a)(6); *Zadvydas*, 533 U.S. at 689. Indefinite detention "would raise a serious constitutional problem" under the Fifth Amendment.

---

[2]While Respondents do not raise this argument, the Immigration Nationality Act (INA) does deprive courts of jurisdiction to hear any claim "arising from the decision to … execute removal orders." 8 U.S.C. § 1252(g). But here Petitioner is challenging the legality of his continued detention, not the government's decision to execute his removal order. *See Alkarori v. Nevada S. Det. Ctr.*, No. 2:25-CV-02567-MMD-MDC, 2026 WL 266756, at *1 (D. Nev. Feb. 2, 2026).

*Zadvydas*, 533 U.S. at 690. Therefore, a noncitizen with a final order of removal may not remain detained where "there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. However, where a detainee refuses to cooperate with the government's execution of their removal order, removal is not unforeseeable. *See Pelich v. I.N.S.*, 329 F.3d 1057, 1061 (9th Cir. 2003) (citing 8 U.S.C. § 1231(a)(1)(C)).

The Court rejects Respondents' argument that Petitioner is currently subject to mandatory detention. Petitioner was ordered removed on August 20, 2002. (ECF Nos. 10 at 1, 11-1.) Petitioner was detained for the mandatory 90-day removal period and then released on an order of supervision.[3] (ECF No. 10 at 2, 14). The statute does not allow the removal period to restart upon return to ICE custody. *See* 8 U.S.C. § 1231(a)(1)(B).

The Court also rejects Respondents' argument that the statutory and due process limitations[4] on post-removal period detention do not apply because Petitioner refused to board removal flights. Respondents claim Petitioner willfully failed to comply with the execution of his order of removal by refusing to board removal flights to Cuba, his country of citizenship and the country named in his final removal order. (ECF No. 18 at 3-5.) In reply, Petitioner notes that "Respondents fail to address that the purported removal flights were actually to Mexico." (ECF No. 19 at 2.) Petitioner argues that while a noncitizen is statutorily obligated to assist in their removal efforts, "a noncitizen does not have an obligation to voluntarily go to another country through an extralegal process." (*Id.* at 3.)

---

[3]Respondents do not refute this factual allegation which Petitioner makes "[o]n information and belief." (ECF No. 10 at 14)

[4]Respondents seem to suggest that the constitutional protections of the Due Process Clause do not apply to Petitioner. (ECF No. 18 at 2.) Respondents quote the Ninth Circuit, which held that "any rights [an inadmissible alien] may have in regard to removal or admission are purely statutory in nature and are not derived from, or protected by, the Constitution's Due Process Clause." *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1167 (9th Cir. 2022) (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020)). But Respondents fail to acknowledge that this quote refers to rights "in regard to *removal or admission*," not rights in regard to *detention*. *Id.* (emphasis added). The Supreme Court and Ninth Circuit have squarely recognized noncitizens' rights under the Due Process Clause, specifically with regard to habeas corpus relief from unlawful civil detention. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678 (2001); *Rodriguez v. Marin*, 909 F.3d 252, 257 (9th Cir. 2018). Therefore, to the extent Respondents make this argument, the Court rejects it.

4

Respondents did not address this argument in their response, instead concluding that "Petitioner has a final order of removal to Cuba" and "is not subject to Third-Country removal in this matter." (ECF No. 18 at 5.) Only upon request from the Court (ECF No. 20) did Respondents investigate and confirm this conclusion was inaccurate. (ECF No. 23 at 2.) Respondents acknowledge this "discrepancy" but do not otherwise address or rebut Petitioner's argument. (*Id.*) The Court concludes that Petitioner's refusal to board removal flights to a third country which Respondents, at best, negligently failed to identify to the Court, does not permit Petitioner's continued detention.

In *Zadvydas*, the Supreme Court "held that [a non-citizen] may be detained only for 'a period reasonably necessary to bring about that [non-citizen's] removal from the United States.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (quoting *Zadvydas*, 533 U.S. at 689)). The Court found it "practically necessary to recognize some presumptively reasonable period of detention" to effectuate removal and adopted six months "to guide lower court determinations." *Zadvydas*, 533 U.S. at 702. The Court rejected a rigid application of this six-month period, reasoning that a detainee is not guaranteed release after six months. *See id.* Correspondingly, the government is not guaranteed the right to hold a noncitizen for at least six months. See *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line... and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits."). This six-month presumption may be rebutted where there is no significant likelihood of removal in the reasonably foreseeable future. *See Douglas v. Baker*, No. 25-CV-2243-ABA, 2025 WL 2997585, at *2 (D. Md. Oct. 24, 2025); *Munoz-Saucedo v. Pittman,* 789 F. Supp. 3d 387, 395-97 (D.N.J. 2025); *Alkarori v. Nevada S. Det. Ctr.*, No. 2:25-CV-02567-MMD-MDC, 2026 WL 266756, at *2 (D. Nev. Feb. 2, 2026).

Here, the Court finds there is no significant likelihood of removal of Petitioner in the reasonably foreseeable future and therefore he rebuts the presumptive reasonableness of his continued detention. The government failed to remove Petitioner to Cuba during his mandatory removal period back in 2002 or in the subsequent 24 years.

The government has failed to remove Petitioner in the two and a half months he has been detained. Petitioner alleges that an ICE agent informed him "that the government has not been able to secure travel documents for Cuban immigrants ordered removed and 'he probably wouldn't be the exception.'" (ECF No. 10 at 2.) Respondents' only evidence that Petitioner is likely to be removed is their now disproven claim that Petitioner had two scheduled removal flights to Cuba. (ECF No. 18 at 4-5.) Respondents concede this was inaccurate. (ECF No. 20.) Respondents' repeated failed attempts to forcibly remove Petitioner to Mexico, without any evidence that future attempts with be successful, only further confirms the unlikelihood of removal in the foreseeable future. *See Suarez-Ramirez v. Bondi*, No. 2:25-CV-02369-MMD-EJY, 2026 WL 115020, at *2 (D. Nev. Jan. 15, 2026) (granting habeas relief to a Cuban national under *Zadvydas* after multiple failed attempts to forcibly remove petitioner to Mexico); *Pena-Gil v. Lyons*, No. 25-CV-03268-PAB-NRN, 2025 WL 3268333, at *1, *3, *4 (D. Colo. Nov. 24, 2025) (same).

## V.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Petition. In particular, because the Court grants Petitioner's requested relief on Grounds One and Two, it does not address the arguments regarding Grounds Three, Four, or Five as they would not impact the outcome of the case.

It is therefore ordered that Sanchez Diaz's Petition (ECF No. 10) is granted. Respondents must immediately release Sanchez Diaz no later than 5:00 PM on Friday, April 3, 2026, subject to reasonable terms of supervision. *See* 8 U.S.C. §§ 1231(a)(6), (a)(3). Determining reasonable terms of supervision shall not in any way impede the immediate release of Sanchez Diaz.

///

///

///

6

It is further ordered that the parties shall file a joint status report by Monday, April 6, 2026 confirming Respondents' compliance with this Order.

DATED THIS 2nd Day of April 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE